WILLIAM E. RUNNER

*v.*

CALVERT FIRE INSURANCE COMPANY

(No. 10527)

Submitted April 28, 1953. Decided June 9, 1953.

*Robert E. Maxwell,* for plaintiff in error.

*Bonn Brown,* for defendant in error.

BROWNING, JUDGE:

The automobile of the plaintiff, while being driven over a road then under construction, struck a rock protruding from such road, damaging the oil pan and causing a complete loss of oil. The automobile was driven approximately six miles beyond the point of impact at which

time a "knock" developed and the car was stopped. Upon examination, the motor was found to be burned out, as a result of running without oil, necessitating its replacement at a cost of $353.99.

Plaintiff notified the defendant, the insurer of the automobile, of the loss and was consulted by Mr. Davis, an adjuster, on behalf of the defendant. Mr. Brown, attorney for the plaintiff, testified that he conversed with Mr. Davis and informed him that suit would be instituted by plaintiff against Sam G. Polino, the contractor engaged in the road construction, but that the Calvert Fire Insurance Company, the defendant herein, would be held for the difference between any recovery against Polino and the amount of damages, $353.99. This was agreeable to Mr. Davis, whereupon suit was instituted in a justice's court, and judgment obtained for $300.00 against Polino. Pending an appeal by Polino, a compromise figure of $175.00 was reached, Mr. Davis was consulted, agreed to such settlement, and also agreed with Mr. Brown that the Insurance Company would pay the difference between $175.00 and the total amount of damages. On this basis, the suit was settled and the plaintiff executed a complete release to Polino of all liability, "specifically excepting" from such release the defendant Insurance Company. After the execution of such release, this action was begun against the insurer to recover under the provisions of the policy. The facts, as heretofore stated, are not contradicted by the insurer, the insurer relying upon an alleged breach of the policy provisions to avoid liability. The provisions of the policy allegedly breached by plaintiff are:

"Coverage B-1—Collision or Upset

Direct and accidental loss or of damage to the automobile caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable thereto.

"Insured's Duties When Loss Occurs

When loss occurs, the insured shall: (a) protect the automobile, whether or not the loss is covered by this policy, and any further loss due to the insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request;

"Subrogation

In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Upon trial of the case, the jury returned a verdict for the plaintiff in the amount of $128.99, a motion to set aside such verdict was overruled and judgment entered thereon, to which this Court granted a writ of error on November 17, 1952.

The principal assignments of error deal with the refusal of the court to hold as a matter of law that the plaintiff is precluded from recovery because of the alleged breaches of the policy provisions, or any one of them, and also, the refusal of the court to give five instructions offered by the defendant which interpreted the policy provisions in accordance with defendant's theory that they, or any one of them, had been breached.

The wife of the plaintiff, who was operating his automobile at the time of the occurrence of the events which have brought about this litigation, testified that as the automobile passed over the protruding rock she heard a sound "not very loud" and at the same time felt the impact. The insurer maintains that under the terms of the policy providing for "direct and accidental loss to the

automobile" it was only liable for damage that occurred to the oil pan from the protruding rock, and not damage suffered by the automobile as the result of loss of oil from the crankcase.

It is true, as contended by the insurer, that this Court held in *Davis* v. *Combined Insurance Company of America,* 137 W. Va. 196, 70 S. E. 2d. 814, that: "The principle that a contract of insurance should be construed liberally in favor of the insured and strictly against the insurer does not apply when the language of such contract is unequivocal and unambiguous and clearly expresses the intention of the parties to such contract." In so stating, the Court was relating an exception to the general rule which is well established in this jurisdiction and elsewhere. We do not believe the language of the contract between the insurer and the insured in this case is so unequivocal and unambiguous that we can say as a matter of law that the damage to the automobile engine, as a result of the oil draining therefrom pursuant to striking the rock, as heretofore related, was not a direct and accidental loss caused by collision of the automobile with another object. At most it was a question for jury determination, and the jury has decided the question in favor of the insured.

The terms of the policy required the insured to protect the automobile "when loss occurs". We do not believe the insured violated the terms of this provision of the agreement. The vibration which the driver of the automobile felt, and the sound which she heard, according to the undisputed evidence, was not such as to indicate that severe damage had occurred to the automobile. It was something that happens often to motorists, and only on exceptional occasions does severe damage result. The driver, in proceeding as she did, did nothing that any other prudent operator of a motor vehicle might not have done. The terms of the insurance contract did not require that she stop immediately at the point of impact and remain there until some future, indefinite time when

an expert examination could be made of the automobile to determine if damage would result from proceeding further along the highway. Again it was a question for the jury to determine whether her conduct was such that the applicable provision of the insurance contract was violated.

The principal contention of the insurer is to the effect that the insured violated the express provisions of the subrogation clause in the policy of insurance in that he destroyed the defendant Insurance Company's right of subrogation by releasing in full the wrongdoer, the Sam G. Polino Company, before payment by the defendant Insurance Company. Although this question is treated extensively by the text writers, and the cases thereon are numerous in other jurisdictions, it would appear that this Court has not decided that precise question. In 26 C. J. Fire Insurance, § 623, it is stated: "It is well settled that if the insured settles with or in any way releases the third person from his liability for the loss, before payment thereof by the insurer, the latter's right to acquire subrogation against such third person is destroyed, and to that extent the insurer is relieved from liability on the policy." To the same effect is 29 Am. Jur., Insurance, § 1344. Many cases are cited by both texts in support of this principle. However, assuming the principles of law therein laid down to be correct, we have presented upon this record the question of whether the insurer waived its rights of subrogation to the extent that there was an agreement that a settlement be made with Polino, or that it pursued a course of conduct by which it is estopped to deny liability upon the contention that the insured violated the subrogation clause. Vance on Insurance, Second Ed., Page 675, states that any action of the insured in releasing the insurer's rights of subrogation, not assented to, will discharge the insurer from liability under the policy and entitle it to recover from the insured any payments already made.

In 10 M.J., Insurance, § 42, it is stated that: "Pro-

visions in insurance policies as to forfeiture and avoidance on breach of conditions therein contained, being for the benefit of the insurer, may be waived by the insurer or his legal agent.* * * " In support of this statement many cases are cited including *Medley* v. *German, etc., Ins. Co.,* 55 W. Va. 342, 47 S. E. 101 and *Stolle* v. *Aetna Fire, etc., Ins. Co.,* 10 W. Va. 546.

It will be observed that the representative of the insurer, with whom the insured and his attorney conferred relative to the action against the Polino Company, as well as the compromise settlement, was an adjuster of the insurer. Although this policy contains the general provisions relative to the authority of the representative of the insurer to waive conditions of the policy, there is no denial either in the record or in the brief of counsel for the insurer of the authority of Davis, the adjuster, to bind the insurer by the acts and conduct related in the testimony of the insured. The defense clearly shows that the insured promptly informed the Insurance Company in writing of the loss incurred, and was informed that its representative Davis would consult the attorney for the insured with reference to the matter. As heretofore related, the evidence of the insured is specific to the effect that Davis agreed to all of the steps taken by the insured in his action against Polino, including an agreement that the insurer would pay the difference of the insured's loss between the amount collected from Polino and the total amount thereof. " * * *. The knowledge of the agent is imputed to the company, whether communicated or not, unless it is shown that special limitations on the powers of the agent were known to the insured. Evidence to establish the estoppel is received as an exception to the 'parol evidence rule.' " 10 M. J., Insurance, § 49, citing in support thereof *Norfolk Fire Ins., Corp.* v. *Wood,* 113 Va. 310, 74 S. E. 186, and *Medley* v. *German, etc., Ins. Co., supra.*

Again we observe that Davis was officially designated as an adjuster of the insurer, but he was also the person

delegated by the insurer to negotiate with the insured and his attorney upon this matter, and although the negotiations covered a long period of time, the insured had no warning to indicate that the adjuster was not, in fact, acting as the duly authorized agent of the insured. There was ample opportunity during this period for the insurer to inform the insured or his attorney to the contrary if the adjuster was acting beyond the scope of his authority. Furthermore, the insurer offered no testimony at the trial denying that Davis had full authority to act as he did, and, in fact, the insurer offered no testimony at all.

In *Powers* v. *Calvert Insurance Company*, 57 S. E. 2d. 638, 642, a South Carolina case, the defendant therein being the same company that is involved in this litigation, the court said: "An insurer will not be permitted to profit from such a course of conduct. It cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer. Appellant asserts that its right of subrogation has been destroyed by the voluntary act of the insured, but the right did not survive the recited conduct of appellant which amounted at least to waiver.* * * "

Under the facts in the case, the insurer is now estopped to deny that the adjuster had full authority to pursue the course of action that he did, and such course of action amounted to, and we so hold it to be a waiver of the insurer's right of subrogation.

The trial court committed no error in refusing Defendant's Instructions Nos. 4, 5, 6, 7 and 8, they being based upon the legal principles which we have held herein to be erroneous.

The judgment of the Circuit Court of Randolph County is affirmed.

*Affirmed.*