381 S.E.2d 367

**Robert BERRY and Janice Sue Berry**

**v.**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.**

No. 18241.

Supreme Court of Appeals of West Virginia.

May 19, 1989.

W. Stephen Flesher, Flesher & Flesher, Huntington, for Nationwide Mut. Fire Ins. Co., a corp.

Kenneth H. Fisher, Huntington, for Robert Berry and Sue Berry.

McHUGH, Justice:

This case is before the Court upon an appeal from a final judgment of the Circuit Court of Cabell County.

The appellant, the defendant below, is Nationwide Mutual Fire Insurance Company. The appellees, the plaintiffs below, are Robert Berry and Janice Sue Berry.

This Court has reviewed the appellant's petition for appeal, the appellees' brief in opposition to granting the appeal, all matters of record and briefs of the parties.[1] We are of the opinion that the judgment of the Circuit Court of Cabell County should be affirmed.

## I

The appellees own residential property in Huntington. Adjacent to their property is the property of Turman Construction Company. From November, 1980 through February, 1981, personal property items in the appellees' residence were disheveled. Records of Turman Construction Company revealed that it had detonated several blasts in late January, 1981. The blasts were part of a process to alter the configuration of the company's land to create accessible storage for equipment. Blasts performed by the construction company on January 28 and 29, 1981 severely damaged the appellees' house. An attempt by the appellees to have the construction company stop the blasting was unsuccessful.

The appellees orally notified their homeowners' insurance carrier, the appellant, of the damage to their house. The insurance carrier for Turman Construction, Transamerica Insurance Company, was notified

---

**1.** This Court has also reviewed the *amicus curiae* brief filed by the West Virginia Trial Lawyers Association urging affirmance of the circuit court's final judgment.

as well. Transamerica, however, investigated the damage claim and decided not to settle immediately, so the appellees filed a formal claim with the appellant in May, 1982.

A claims manager and claims adjuster for the appellant went to the appellees' property to inspect the damage. The appellee, Robert Berry, was dissatisfied with what he felt was a poor inspection, claiming that for every item of damage shown to the adjusters, the adjusters suggested an "alternate reason" that may have caused the damage. The appellees assert that the adjusters refused to go on portions of their property to see where the blasting occurred.

Transamerica, the insurance carrier for Turman Construction Company, secured a seismographic report from Vibra–Tech Associates, a consulting firm in Pittsburgh, Pennsylvania. Vibra–Tech conducted a vibration study based on a blast detonated on February 28, 1981 by Turman Construction Company. The report submitted by Vibra–Tech concluded that blasts similar to the one conducted on February 28, 1981, did not constitute a hazard to structures in the vicinity of the work by Turman Construction Company.

The Vibra–Tech report, however, was conducted at another residential site. A representative of Vibra–Tech testified that the test blast conducted by Vibra–Tech had nothing to do with the appellees' property.

The appellant was advised of the Vibra–Tech report, and denied the appellees' claim based upon the conclusions of this report.

The appellees filed this action against the appellant and Turman Construction Company. A pretrial conference resulted in a settlement with Turman for $60,000. The case against the appellant went to trial and resulted in a jury verdict for the appellees. The appellees were awarded: $75,000 compensatory damages for breach of contract, reduced by the circuit court to $15,000, allowing for a set-off representing the amount of the $60,000 Turman settlement; $50,000 for the appellant's breach of its

duty of good faith and fair dealing in failing to settle the appellees' claim; and $500,000 punitive damages for the appellant's willful, malicious and intentional conduct.

The appellant's motion to set aside the jury verdict and to be awarded a new trial was denied by the circuit court.

## II

The appellant argues that its subrogation rights were precluded by the appellees' settlement with Turman Construction Company. We disagree.

The insurance contract between the appellant and the appellees contained a subrogation clause which provided:

> 11. *Subrogation.* Nationwide may require from the Insured an assignment of the Insured's right of recovery against any party or parties responsible for loss *to the extent that payment therefor is made by the Company.* The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights and shall do nothing after a loss to prejudice such rights.

(emphasis supplied)

Under the facts of this case, the subrogation clause never became operative because of the appellant's own conduct. As the facts of this case indicate, and as discussed in section IV of this opinion, the appellant did not approve the appellees' claim, but instead, wrongfully denied it. Under the subrogation clause in the insurance contract the appellant would have acquired the appellees' right of recovery against Turman "to the extent that payment" had been made by the appellant to the appellees. The appellant, however, exercised its own judgment not to pay the appellees' claim, without any conduct by the appellees to prejudice the appellant's subrogation rights. Therefore, the appellant's argument that the subrogation clause was violated by the appellees is factually inaccurate.[2]

2. The appellees rebut the appellant's argument in this regard by relying upon syllabus point 2

■ Accordingly, we hold that where an insurer decides, after complete investigation, not to approve payment to its insured based upon the allegedly tortious conduct of another party, the insurer's claim that a subsequent settlement by the insured with the other party violates the subrogation clause of the insurance contract by prejudicing the insurer's subrogation rights is invalid.

The appellant also contends that the circuit court erred by refusing to recognize that the appellees' $60,000 settlement with Turman Construction Company constituted an accord and satisfaction of the underlying claim for compensatory damages. Consequently, the appellant maintains, the appellees were barred from recovering any compensatory damages from the appellant.

Under the common law, the release of one joint tortfeasor operated as a release of all joint tortfeasors. This rule, however, has been changed by statute, namely, *W.Va.Code*, 55–7–12 [1931], which provides:

A release to, or an accord and satisfaction with, one or more joint trespassers, or tort-feasors, shall not inure to the benefit of another such trespasser, or tort-feasor, and shall be no bar to an action or suit against such other joint trespasser, or tort-feasor, for the same cause of action to which the release or accord and satisfaction relates.

The appellant contends that this statutory provision is not applicable to this case because it was not acting in *pari delicto* with Turman Construction Company.

Therefore, the appellant maintains that the appellees' $60,000 settlement with Turman Construction Company, combined with the $75,000 compensatory damages awarded by the jury, have allowed the appellees excessive compensation for the blasting damage.[3]

■ While it is well established that a party to a lawsuit is allowed but one recovery, *see Brewer v. Appalachian Constructors, Inc.*, 135 W.Va. 739, 747, 65 S.E.2d 87, 93 (1951), in this case the appellees are not precluded from recovering compensatory damages from both the appellant and Turman Construction Company.

We need not decide whether an accord and satisfaction occurred in this case within the meaning of *W.Va.Code*, 55–7–12 [1931] or of the common-law rule of releasing all joint tortfeasors. An accord and satisfaction is:

A method of discharging a claim whereby the parties agree to give and accept something in settlement of the claim and perform the agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance, and *it is a new contract substituted for an old contract* which is thereby discharged, or for an obligation or cause of action which is settled, and must have all of the elements of a valid contract.

*Black's Law Dictionary* 16 (5th ed. 1979) (emphasis supplied). *See also McCormick v. Hamilton Business Systems, Inc.*, 175 W.Va. 222, 224 n. 1, 332 S.E.2d 234, 236 n. 1 (1985); 1A M.J. *Accord and Satisfaction* § 1 (1980). In this case the relationship

of *Runner v. Calvert Fire Insurance Co.*, 138 W.Va. 369, 76 S.E.2d 244 (1953), which states: "A provision for subrogation, contained in an insurance contract, is not violated where the insured has, with full knowledge and acquiescence of the insurer, compromised his claim against the wrongdoer and executed a release thereof." In *Runner,* this Court quoted, with approval, a decision of the Supreme Court of South Carolina which held that an insurer "cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer." *Id.* 138 W.Va. at 375, 76 S.E.2d at 247, *quoting Powers v. Calvert Fire Ins. Co.,* 216 S.C. 309, 316, 57 S.E.2d 638, 642 (1950).

*Runner* does not apply to the facts of this case. In this case, the issue of whether an insured's violation of a subrogation clause in the insurance contract is excused by the insurer's acquiescence to the settlement by the insured with the tortfeasor does not arise. The subrogation clause itself is not applicable when the insurer's conduct alone, specifically, denial of the claim after a complete investigation, forecloses any subrogation rights of the insurer.

3. As stated in section I of this opinion, the compensatory damages award was reduced by the circuit court to $15,000, allowing for a set-off representing the amount of the $60,000 Turman settlement.

between the appellant and the appellees was contractual, based upon the insurance policy that the appellees purchased from the appellant. The appellees' settlement with Turman, however, was based upon a tort. There was no contract or claim between the appellees and Turman that would cause the appellees' settlement *with Turman* to constitute an accord and satisfaction *with the appellant.* Consequently, the appellees' settlement with Turman was not an accord and satisfaction.

▰ In short, as stated in 1 Am.Jur.2d *Accord and Satisfaction* § 52 (1962), an accord and satisfaction is a bar only as regards the subject matter of the agreement and is no bar to claims between the parties not involved in the agreement.

### III

Prior to the trial of this case, the appellant moved to bifurcate the issues of breach of contract and punitive damages. The circuit court denied the motion, however, and the appellant contends that it was error to do so.

▰ The appellant maintains that a breach of its contract with the appellees needed to be proven before the appellees' claim for punitive damages arose. In so contending, the appellant relies upon syllabus point 2 of *Jenkins v. J.C. Penney Casualty Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), in which this Court held: "An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code, 33–11–4(9); but such private cause of action cannot be main-

tained until the underlying suit is resolved." [4]

We also stated in *Jenkins* that "[t]o permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim." 167 W.Va. at 608, 280 S.E.2d at 259.

*Jenkins* is fundamentally distinguishable from the case now before us. There, the insured was the tortfeasor, and the plaintiff brought an action against the tortfeasor's insurance company. Our holding in *Jenkins,* that an implied private cause of action against an insurance company may not be maintained until the underlying claim is resolved, was based on the potential prejudicial impact that combining the actions would have on the jury. *See* 167 W.Va. at 608 n. 11, 280 S.E.2d at 259 n. 11.

In the case now before us, the appellees, the insureds, brought an action against their *own* insurance company, not the original tortfeasor's insurance company. Clearly, there was no third party in this case that was prejudiced by trying the breach of contract issue with the issue of punitive damages. [5]

▰ The appellant further contends that it was entitled to separate trials of the issues pursuant to *W.Va.R.Civ.P.* 42(c), which provides:

(c) *Separate trials.*—The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy,

---

4. *W.Va.Code,* 33–11–4 [1974] provided in pertinent part:

    The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
    
    . . . .
    
    (9) *Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:
    
    . . . .
    
    (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of

    claims in which liability has become reasonably clear[.]

    This section was amended in 1985. The pertinent provision, however, was not changed by the amendment.

5. The appellant acknowledges the distinction between *Jenkins* and the case now before us. It argues, however, that *Jenkins* is applicable to *all* claims for punitive damages, contending that the underlying claim should be settled before a claim for punitive damages even arises, regardless of whose insurance company is involved. We disagree with this contention for the reasons stated in this opinion.

may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State.

This Court has stated that "under Rule 42(c) of the West Virginia Rules of Civil Procedure separate trials may be ordered under third party practice, but this is purely permissive on the part of the trial court." *Bluefield Sash & Door Co. v. Corte Construction Co.*, 158 W.Va. 802, 806, 216 S.E.2d 216, 219 (1975), *overruled on other grounds, Haynes v. City of Nitro*, 161 W.Va. 230, 240 S.E.2d 544 (1977). *See also Anderson v. McDonald*, 170 W.Va. 56, 62, 289 S.E.2d 729, 735 (1982). Furthermore, in syllabus point 5 of *Bluefield Sash*, this Court held:

> The provisions for ... separate trials under Rule 42(c), West Virginia Rules of Civil Procedure, are within the sound dis-

6. Specifically, the pertinent instructions on these points are as follows:

Plaintiffs' Instruction No. 3, as amended, states:

The Court further instructs the jury that should you find that the Plaintiffs are entitled to recover against the Defendant Nationwide Mutual Fire Insurance Company under the Contract of Insurance between the parties, then you may consider the claim of the Plaintiffs which is based upon an insurer's duty to deal fairly and in good faith with its policy holders. The law implies in every homeowner's contract of insurance a covenant of good faith and fair dealing. It is a duty required by West Virginia law. The duty requires an insurance company to deal in good faith and fairly with its insureds in handling its insureds' claims.

The duty of an insurance company towards its insured is analogous to that of a fiduciary in that it must assess claims as a result of an appropriate and careful investigation and its conclusion should be the result of the weighing of probabilities in a fair and honest way. The insured has a right to receive the benefits of the agreement and for the insurer to fulfill its obligation not to impair the right of its insured to receive the benefits of the agreement[,] it must give at least as much consideration to the insured's interest as it does to its own.

cretion of the trial court and where the third party procedure may create confusion or cause complicated litigation involving separate and distinct issues the trial court does not abuse its discretion in refusing to allow impleader under third party practice.

In this case, bifurcation of issues at trial was clearly a matter within the sound discretion of the circuit court. There is no showing that the appellant has been prejudiced by the circuit court's refusal to try the issues of breach of contract and punitive damages separately.

Therefore, it was not error for the circuit court to deny the appellant's motion to bifurcate the issues of breach of contract and punitive damages.

## IV

The appellant contends that it was reversible error for the circuit court to instruct the jury on the issue of the appellant's breach of its duty of good faith and on the issue of punitive damages.[6]

> Therefore, if you find from a preponderance of the evidence submitted in this case that the Defendant Nationwide Mutual Fire Insurance Company failed to conduct an appropriate and reasonable investigation, failed to weigh the probabilities of any investigation in a fair and honest way or failed to give at least as much consideration to the Plaintiffs' interests as it did to its own, then you may find that the Defendant breached its duty of good faith and fair dealing and your verdict may be for Robert E. Berry and Janice S. Berry.

Plaintiff's Instruction No. 5, as amended, states:

You are further instructed that punitive damages may be awarded in your discretion if you find that the insurance company's actions evidenced an intentional, reckless or willful failure to determine whether or not there was any lawful basis for its refusal to pay its insured at the time of refusal. That is to say, was [sic] its acts done with such malice as implied a spirit of mischief or criminal indifference to the civil obligations affecting the rights of its insured. If you find this is a case in which exemplary or punitive damages should be awarded, your next inquiry then would be whether the compensatory damages, as ascertained by you, are sufficient as punishment to the Defendant, which you may find they are, but if you find they are not sufficient as punishment to the Defendant or

Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract. *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 330, 352 S.E.2d 73, 80 (1986); *Warden v. Bank of Mingo*, 176 W.Va. 60, 65, 341 S.E.2d 679, 684 (1985); *Horn v. Bowen*, 136 W.Va. 465, 469, 67 S.E.2d 737, 739 (1951); *Hurxthal v. Boom Co.*, 53 W.Va. 87, 102, 44 S.E. 520, 526 (1903). However, this Court has recognized circumstances where punitive damages are awardable against an insurance company that has wrongfully denied paying a claim. "An insurer cannot be held liable for punitive damages by its refusal to pay on an insured's property damage claim unless such refusal is accompanied by a malicious intention to injure or defraud." Syl. pt. 2, *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986); *See also Paxton v. Allstate Insurance Co.*, 663 F.Supp. 99, 101 (S.D.W.Va.1987).

In *Hayseeds*, we distinctly spelled out the level of malice that would subject an insurance company to liability for punitive damages:

> By 'actual malice' we mean that the [insurance] company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant [insurance company], ... Unless the policyholder is able to introduce evidence of

intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury.

*Hayseeds*, 177 W.Va. at 330–31, 352 S.E.2d at 80–81 (footnote and citations omitted).

The appellant maintains that its actions in this case did not rise to a level of malice that would subject it to being liable for punitive damages.

The appellees, on the other hand, claim that it is clear from the evidence introduced at trial that the appellant denied their claim willfully, maliciously and intentionally.

It is clear from the record that the appellant knew that the appellees' claim was proper.[7] During the visual inspection by the appellant's representatives, which revealed substantial damage to the appellees' home, the appellee, Robert Berry, explained to the representatives that he had seen some of the damage actually take place during the construction company's blasting. The representatives testified at trial that they did not think that Berry was lying. The visual inspection revealed substantial glass breakage and other damage, and the appellant's representatives even acknowledged, at trial, that glass breakage was covered by the appellees' insurance policy. One of the appellant's representatives held himself out to be an expert in blasting damages during the visual inspection. Testimony at trial, however, indicated that he was not an expert in such

---

sufficient to deter the Defendant and others from committing like offenses, your next inquiry will be how much, if any, taken together with the compensatory damages found by you, and in reasonable proportion to such compensatory damages, is required to make the punishment of the Defendant adequate, and to deter the Defendant and others from committing like offenses. You are further instructed by the Court that Plaintiffs are not entitled to exemplary and punitive damages as a matter of right, and the awarding or not awarding thereof is a matter wholly within your discretion.

7. There was a conflict in the testimony at trial in regard to whether the appellee, Robert Berry, requested the appellant's representatives to inspect the blasting site and whether one of the

representatives held himself out to be an expert in blasting damage. In syllabus point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), we held that:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Accordingly, we must assume that the conflicts in the evidence were resolved by the jury in favor of the appellees.

matters and that this was the reason he refused to inspect the site of the blasting. The appellant's representatives consistently suggested an "alternate reason" that may have caused the damage to every item that the appellee, Robert Berry, showed to them. Furthermore, one of the appellant's representatives communicated with a claims representative of Transamerica Insurance Company, the insurance carrier for Turman Construction Company. Transamerica's representative informed the appellant's representative that Transamerica would not settle the claim immediately, but would do so, perhaps, at a later time. The report submitted by Vibra–Tech was based on test blasting that was not even conducted upon the appellees' property. In fact, the test blasting had nothing to do with the appellees' property, and yet, the appellant based its denial of the appellees' claim on this report.

Finally, one of the appellant's representatives recommended that the appellees' insurance policy not be renewed by the appellant. The appellant sent a notice of nonrenewal to the appellees, but did not set forth its reasons why, despite the policy being in effect for approximately nine years.

Based upon the foregoing recitation of facts relating to punitive damages, there was ample evidence to present a jury question as to the appellant's willful, malicious and intentional denial of the appellees' claim.

The circuit court's instructions were unquestionably in accordance with the principles we set forth in *Hayseeds*.[8] Because it was not error for these instructions to be submitted, this Court will not disturb the jury's verdict imposing liability for the appellant's breach of its duty of good faith and for punitive damages.

Accordingly, we hold that punitive damages may be awarded to an insured if the insurer actually knew that the claim was proper and the insured can prove that it was willfully, maliciously and intentionally denied. Therefore, in such a case, it is

not error for a trial court to give an instruction stating that punitive damages may be awarded.

## V

In their amended complaint, the appellees sought $200,000 in punitive damages. The jury, however, awarded the appellees $500,000. The appellees' motion to amend the *ad damnum* clause to conform to the jury verdict was granted. The appellant contends that the circuit court erred by allowing the appellees to amend the *ad damnum* clause.

*W.Va.R.Civ.P.* 15(b) provides:

(b) *Amendments to conform to the evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. *Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment;* but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence should prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(emphasis supplied) Subsection (a) of this Rule allows a circuit court to grant leave to amend pleadings "when justice so requires." In syllabus point 3 of *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), this Court stated:

8. It should be noted that this case was tried approximately ten months prior to our decision in *Hayseeds*. The circuit court's instructions,

however, reflected the principles which we enunciated therein.

The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W.Va. R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.[9]

This holding was restated in *State ex rel. Board of Education v. Spillers*, 164 W.Va. 453, 259 S.E.2d 417 (1979):

.Prejudice to the adverse party is the paramount consideration in motions to amend. Absent a showing of prejudice to an adverse party motions to amend should be granted....

....

... In the final analysis it is not the amount stated in the ad damnum clause but the actual proof of the plaintiff's damages which will control the issue.

*Id.* 164 W.Va. at 455–56, 259 S.E.2d at 419 (citations omitted).

Furthermore, "[c]hallenges based on such technicalities cannot prevail under our Rules of Civil Procedure. *See,* W.Va.R.Civ. Pro., rules 54(c) and 15(b). The propriety of the verdict is tested by the evidence to support the recovery and not by the amount of the ad damnum clause." *Middle–West Concrete Forming & Equipment Co. v. General Insurance Co. of America,* 165 W.Va. 280, 291, 267 S.E.2d 742, 748 (1980).[10]

The appellant maintains that its defense strategy at trial was prepared in accordance with facing the possibility of $200,000 in liability for punitive damages, not $500,000.

We see no prejudice suffered by the appellant as a result of the circuit court allowing the appellees to amend the *ad damnum* clause. The $500,000 figure merely conformed to the jury verdict which was the result of the evidence presented.

Accordingly, it was not error for the circuit court to grant the appellees' motion to amend the *ad damnum* clause to conform to the jury verdict.

## VI

Finally, the appellant contends that the circuit court erred by allowing prejudgment interest on the compensatory damages awarded to the appellees for the appellant's breach of contract.

*W.Va.Code,* 56–6–31 [1981] provides:

Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the

---

9. *W.Va.R.Civ.P.* 15(a) provides:

(a) *Amendments.*—A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

10. *W.Va.R.Civ.P.* 54(c) provides:

(c) *Demand for judgment.*—A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.* (emphasis supplied)

**178**

court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

The appellant concedes that the provisions of *W.Va.Code*, 56–6–31 [1981] are mandatory. *Cf. Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 516, 207 S.E.2d 897, 920 (1974) (relating to postjudgment interest); *Rakes v. Ferguson*, 147 W.Va. 660, 666, 130 S.E.2d 102, 107 (1963) (relating to postjudgment interest).

The appellant maintains that because the compensatory damages were awarded in general verdict form, it cannot be discerned what dollar amounts are attributable to each element of damage. It is for this very reason that the appellees are entitled to prejudgment interest on the entire compensatory damages verdict.

> Where a general verdict is returned for loss or damage to real and personal property which includes an amount for loss of use arising from annoyance and inconvenience, the plaintiff is entitled to prejudgment interest on the entire amount of the general verdict unless the jury has by separate finding established an amount for such loss of use.

Syl. pt. 3, *Kirk v. Pineville Mobile Homes, Inc.*, 172 W.Va. 693, 310 S.E.2d 210 (1983).

The verdict returned by the jury awarded the appellees $75,000 in compensatory damages. The verdict did not apportion the compensatory damages into elements, such as loss of use arising from annoyance and inconvenience. The verdict may or may not have included an amount for loss of use, but that is not for us to determine. Because the compensatory damages were awarded in general verdict

form, the appellees were clearly entitled to prejudgment interest on these damages.[11]

Accordingly, it was not error for the circuit court to allow prejudgment interest on the compensatory damages awarded to the appellees for the appellant's breach of contract.

For the reasons set forth in this opinion, the final judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

McGRAW, J., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

---

**11.** As a cross-assignment of error, the appellees contend that the circuit court erred by failing to award them prejudgment interest on the award of $50,000 as damages for the appellant's breach of its duty of good faith and fair dealing. Such damages are not, however, of the nature that

are reasonably ascertainable by calculation; hence, prejudgment interest on the award of damages for an insurer's breach of its duty of good faith and fair dealing are not to be recovered under *W.Va.Code*, 56–6–31 [1981].