**Gary Carson CLINE, Plaintiff,**

v.

**ALLSTATE INSURANCE CO., Defendant.**

No. Civ.A. 2:99–1037.

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 10, 2000.

See also 20 F.Supp.2d 977.

Christopher J. Heavens and Vickie R. Dodd, Heavens Law Offices, Charleston, WV, for plaintiff.

Charles M. Love, III and Ronda L. Harvey, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Plaintiff's motion to remand this action and Defendant's motion to dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(6). For reasons that follow, the Court **GRANTS** Plaintiff's motion to remand; Defendant's motion to dismiss is **DENIED** as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's claims initially arose from an automobile accident from which he alleges injuries. Plaintiff was a passenger in a truck driven by Janice Matney, which was involved in a two-vehicle collision on October 12, 1996 in Tazewell, Virginia. Plaintiff originally brought a civil action on June 16, 1998 in Mingo County, West Virginia against Defendant Allstate Insurance Company ("Allstate") and Allstate's insured Matney. In the 1998 Complaint, Plaintiff requested damages for "medical bills, pain and suffering, net economic loss, annoyance, aggravation and inconvenience, plus pre-judgment and post judgment statutory interest, punitive damages, plus costs and attorney fees, and any other relief deemed appropriate." (Compl., *Cline v. Matney, et al.,* Mingo County, West Virginia Civil Action No. 98–C–208.) That action was removed properly to this Court; Plaintiff's motion to remand was denied, *Cline v. Matney,* 20 F.Supp.2d 977 (S.D.W.Va.1998) (Cline I). Subsequently, the Court involuntarily dismissed the action without prejudice pursuant to *Federal Rule of Civil Procedure* 41(b), finding venue was improper because both Defendants resided outside West Virginia and the accident occurred in Virginia.

Plaintiff then refiled the action against Allstate and its insured Matney in Virginia; however, no Unfair Trade Practices claim was asserted there against Allstate because Virginia provides no private cause of action for such claims.[1] After resolution of the Virginia action, Plaintiff brought the current action in Mingo County, West Virginia solely against Allstate, asserting violations of the West Virginia Unfair Trade Practices Act ("UTPA"), W.Va.Code §§ 33–11–1, *et seq.* Defendants timely removed based on diversity jurisdiction. Plaintiff is a resident of West Virginia; Defendant Allstate is an Illinois resident. Defendant asserts the amount in controversy exceeds $75,000.00 (seventy-five thousand dollars), exclusive of interest and costs. The Complaint prays for relief in the amount of $74,999.00 (seventy-four thousand nine hundred ninety-nine dollars) for "legal fees and costs, net economic losses, annoyance, and aggravation and inconvenience." (Compl.¶ 25.) Plaintiff requests no punitive damages. Plaintiff now moves to remand this action.

## II. DISCUSSION

District courts have original jurisdiction of all "civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Defendants may remove any case of which the district courts have original jurisdiction. 28 U.S.C. § 1441(a). Removal statutes must be construed strictly against removal. *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994). The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction. *Id.* If federal jurisdiction is doubtful, a remand is necessary. *Id.*

Under an often cited principle, in determining whether the requisite jurisdictional amount is in controversy, the "sum claimed by the Plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In *St. Paul*, however, Plaintiff claimed an amount in *excess* of the jurisdictional amount, on the basis of which the suit was removed, after which Plaintiff amended the complaint reducing the sum to substantially less than that amount. *See id.* at 284, 58 S.Ct. 586. Under those circumstances, the Court stated:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, *the sum claimed by the plaintiff controls if the claim is apparently made in good faith.* It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288–89, 58 S.Ct. 586 (emphasis added). The explanation for this rule is that "there is virtually no possibility that the plaintiff, who chose to bring the action in a state court, and presumably would prefer to remain there, has exaggerated the size of the claim in order to create federal subject matter jurisdiction. It is true, of course, that the plaintiff may have inflated the ad damnum in his state court complaint for other tactical reasons." 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725 (1998).

Where, as in this case, Plaintiff requests relief in a specific amount below the jurisdictional amount, a court's problem is more difficult. Although the *ad damnum* clause does not bind a plaintiff,[2] on the

---

1. Defendant argues in the motion to dismiss that Virginia law should apply to this action, in which case it must be dismissed pursuant to *Federal Rule of Civil Procedure* 12(b)(6).

2. This Court has previously held the *ad damnum* clause does not bind a plaintiff to the amount sought in a case governed by West Virginia law, where a plaintiff may amend the pleadings after final judgment to conform to the evidence. *Adkins v. Gibson*, 906 F.Supp.

principles stated above, it provides a presumptive figure of the amount in controversy.

A judge of this court has interpreted *St. Paul* to mean a defendant may never challenge the amount in controversy if the plaintiff has pled a specific sum. *Hicks v. Universal Housing, Inc.*, 792 F.Supp. 482 (S.D.W.Va.1992) (Faber, J.). As noted, though, the *St. Paul* rationale is not the standard to be applied to a plaintiff's precise ad damnum claim *below* the jurisdictional amount. For this reason, another respected judge of this District has held *St. Paul* "is limited in utility to cases in which the plaintiff himself has placed the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount." *Watterson v. GMRI, Inc.*, 14 F.Supp.2d 844 (S.D.W.Va. 1997) (Staker, J.) (quoting *Garza v. Bettcher Indus., Inc.*, 752 F.Supp. 753, 755 (E.D.Mich.1990)).

Plaintiff's claim of the intriguingly precise figure of $74,999, however honestly and innocently proposed, nevertheless raises the commonsense suspicion that Plaintiff would slip barely beneath the jurisdictional threshold. More important, because Plaintiff's final recovery is not limited by this figure, inquiry is necessary to limit "the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *De Aguilar v. Boeing, Co.*, 47 F.3d 1404, 1410 (5th Cir.1995).

■ While the party seeking to remove a case to federal court has the burden of establishing federal jurisdiction, the appropriate burden of proof on the removing party in cases where plaintiffs allege a specific amount below the jurisdictional bottom line is the subject of much discussion and uncertainty.[3] *See, e.g., Watterson*, 14 F.Supp.2d 844 (collecting cases, analyzing standards, and applying a "highly probable standard," i.e., defendant must prove it highly probable that plaintiff will recover damages in excess of jurisdictional amount). Our Court of Appeals has not addressed the issue. Other courts have employed numerous standards, the most common being that defendant must show that the amount in controversy exceeds $75,000 1) to a "legal certainty," 2) by a "preponderance of the evidence," or 3) by "some reasonable probability." *See* 14C *Federal Practice & Procedure* at § 3725. Alternatively, using the "reverse legal certainty test," a defendant must show that it does *not* appear to a legal certainty that the amount in controversy falls below the jurisdictional amount. *Id.* The undersigned previously applied a form of the legal certainty standard where no specific amount was prayed for in the complaint. *See Adkins*, 906 F.Supp. at 347 (remanding because "the Court finds and concludes the amount in controversy has been established to a legal certainty to be less than the jurisdictional minimum."). The Court declines to extend that holding or to choose an alternative in the instant case with its specified damage amount, where Defendant obviously has failed to meet its proof burden, however low or high that burden may be.

Rather than attempting to establish the value of Plaintiff's claim, Defendant points first to the damage amount claimed, "one dollar and one cent shy of the jurisdictional amount," which Defendant alleges is

345, 348 (S.D.W.Va.1995) (Haden, C.J.) (citing *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 381 S.E.2d 367 (1989)). The *Adkins* complaint, however, requested no specific amount in damages.

**3.** Cases where the complaint specifies no damage amount or where plaintiffs are required only to allege a threshold figure ("more than $10,000," for example) present a similar, though not identical problem. *See Sayre v. Potts*, 32 F.Supp.2d 881 (S.D.W.Va. 1999) (Goodwin, J.) (collecting cases, analyzing standards, and applying preponderance of the evidence standard).

artfully pled in "bad faith" to avoid federal jurisdiction. Plaintiff's choice of $74,999 may be too clever by half, drawing unnecessary attention to scraping by, but excessive cuteness is not bad faith, and Defendant offers no further evidence thereof.

 In his initial complaint, Plaintiff asked for punitive damages, an important factor in the Court's calculation there (where no specific amount was demanded) denying remand. *Cline I* at 979. Defendant argues Plaintiff cannot state now the facts and circumstances of the case have changed to alter that result.[4] Admittedly, Defendant is in a difficult position, loathe to point out any of its own conduct which would warrant an award to Plaintiff for punitive damages so as demonstrably to raise the amount in controversy above $75,000. Nevertheless, Plaintiff is master of his complaint; he has chosen not to seek punitives, although they are permissible under the UTPA.[5] *See, e.g., Poling v. Motorists Mutual Ins. Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994); *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996).

Defendant also argues under West Virginia law Plaintiff is not bound by the *ad damnum* clause, but could seek to amend it after final judgment to conform to the evidence. *See Berry v. Nationwide Mut. Ins. Co.,* 181 W.Va. 168, 381 S.E.2d 367 (1989). And, under *West Virginia Rules of Civil Procedure, Rule* 54(c), identical to the federal rule, "a judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleading." As a practical matter, the Court cannot divine how Plaintiff could be awarded punitive damages when no proof of Defendant's malicious conduct would be adduced because it would be irrelevant to Plaintiff's claims. Further, the jury would not be instructed on punitive damages.

### III. CONCLUSION

Defendant has not offered proof that Plaintiff's claims are greater than $75,000, whether to a legal certainty, by a preponderance of the evidence, by some reasonable probability, or otherwise. Accordingly, the Court finds and concludes that where Plaintiff has requested damages in a specific amount below the jurisdictional threshold and Defendant has failed to carry its burden of proving the Court's jurisdiction, remand is the inevitable result. Therefore, the Court **GRANTS** Plaintiff's motion to remand this case to the Circuit Court of Mingo County. Defendant's motion to dismiss is **DENIED** as moot.

The Clerk is directed to send a copy of this Memorandum Order and Opinion to counsel of record and a certified copy to the Circuit Clerk of Mingo County, West Virginia.

---

4. As discussed above, the case originally also involved Matney, the driver-defendant, against whom Plaintiff sought unpaid medical expenses and damages for pain and suffering. Those claims were settled. Only the UTPA claims against Allstate remain.

5. Plaintiff also states he offered to enter into a stipulation whereby plaintiff would agree to not collect more than $74,999 in his UTPA case in state court. Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Remand ¶ 2. In all likelihood, Plaintiff will be estopped from avoiding this promise later.