434 S.E.2d 394

**Frances ARNDT and David Arndt, Plaintiffs Below, Appellants,**

v.

**Bobby L. BURDETTE II, Defendant Below**

**Westfield Insurance Company, Appellee.**

**No. 21457.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1993.

Decided July 22, 1993.

Jeffrey T. Jones, Hunt, Lees, Farrell & Kessler, Charleston, for appellants.

Richard E. Rowe, B. Karleton Kesner, Goodwin & Goodwin, Charleston, for appellee Westfield Ins. Co.

WORKMAN, Chief Justice:

This case is before the Court upon the appeal of Frances and David Arndt from the May 27, 1992, final order of the Circuit

Court of Raleigh County granting the Appellee's, Westfield Insurance Company's [1] (hereinafter referred to as Westfield), motion for summary judgment. The sole assignment of error is whether the circuit court erred in granting the Appellee's motion for summary judgment. Based upon the parties' briefs, arguments and all other matters submitted before this Court, we find that the motion for summary judgment was properly granted, and accordingly affirm the lower court's decision.

On December 25, 1988, the Appellant, Frances Arndt, was involved in an automobile accident on West Virginia Route 41 in Raleigh County, West Virginia. The Appellant's car was struck in the front by a car owned and operated by Bobby Lee Burdette.[2] The Appellant's car was then struck in the rear by a vehicle operated by William Lehman. Mr. Burdette was cited at the accident scene for failure to maintain control and for being left of center. The accident report also indicated that a contributing cause of the accident was Mr. Lehman's failure to maintain control of his vehicle. As a result of the accident, the Appellant suffered a fractured knee cap, a nondisplaced fractured hip, a fractured left rib, abrasions and lacerations. She has undergone surgery on her knee and is expected to undergo more knee surgery. The Appellant's vehicle also sustained over $2,000 in damage.[3]

At the time of the accident, Mr. Burdette was insured by Aetna Insurance Company (hereinafter referred to as Aetna). Mr. Lehman was insured under a policy issued by Allstate Insurance Company (hereinafter referred to as Allstate) with limits of $100,000 per person and $300,000 per occurrence. The Appellants were insured under a policy issued by the Appellee,[4] which prohibited the Appellants from entering into any agreement which prejudiced the

rights of their insurer and from settling a claim potentially involving underinsurance without the Appellee's written consent. The Appellants filed claims with both Allstate and Aetna. Also, on October 9, 1989, the Appellants, through their attorney, Jeffrey Jones, informed the Appellee that Mrs. Arndt may need her underinsurance coverage.

A settlement was negotiated and entered into with Mr. Burdette's insurance carrier, Aetna, for $20,122.95, which exhausted Mr. Burdette's policy limits. However, in conversations with Larry Keefer, insurance adjustor for Allstate, Mr. Keefer indicated to the Appellants' attorney that in his opinion, Mr. Lehman was not negligent and that he was not the cause of Mrs. Arndt's injuries. Mr. Keefer stated that Allstate would only contribute a nominal fee to settle the matter on behalf of Mr. Lehman.

On July 26, 1990, the Appellants' attorney sent a letter to the Appellants indicating that it was the Appellee's position that it would not pay underinsurance coverage until some money was collected from Allstate. The attorney indicated to the Appellants that he was going to attempt to negotiate a small settlement with Allstate. Also, on the same day, the Appellants' counsel wrote a letter to the Appellee confirming the Appellee's position that it would not provide underinsurance coverage until some money was obtained from Allstate. In that same letter, the attorney inquired of the Appellee as to whether the insurer would still pay underinsurance coverage if Mr. Lehman's policy limits were not obtained.

On November 2, 1990, Mr. Jones wrote to the Appellee stating that Mrs. Arndt had received an offer of settlement from Allstate for $1,250. Mr. Jones requested the Appellee to either waive its subrogation right or forward a check for $1,250.[5] Also,

1. The Appellee was the Appellant's insurer at the time of the accident.

2. Mr. Burdette was a named defendant below but is not appealing the lower court's ruling.

3. The record was void of information concerning the total amount of the Appellants' damages.

4. The amount of the Appellants' underinsurance coverage was not made part of the record.

5. Apparently, the Appellants' attorney was operating under the belief that receipt of any amount from Allstate would have made his clients' own underinsurance coverage available as indicated by his statement to the Appellee in

Mr. Jones indicated to the Appellee that if the company failed to either waive subrogation, or forward the check within thirty days, the Appellee would lose its right to subrogate claims against Mr. Lehman and his insurer because the Appellants would release them as part of the settlement agreement.

The Appellee informed the Appellants by letter dated November 15, 1990, that the insurer was checking into the possibility of subrogation. Further, the Appellee indicated that it was not certain that Mrs. Arndt's claim was in excess of Mr. Lehman's policy limits, which it contended had to occur before the underinsurance coverage would be accessible. Finally, the Appellee informed the Appellants that a decision on whether or not the insurer would give permission to settle with Allstate would be made within thirty days. Again on November 27, 1990, the Appellee informed the Appellants that as far as the insurer was concerned "before the Underinsured Motorist coverage of the Arndts can be involved, full recovery must be made from the joint tort-feasors[ ]" and "that in settlement of the claim, you cannot jeopardize our subrogation in this matter."

By letter dated December 13, 1990, the Appellants' attorney informed Allstate that due to the approaching statute of limitations,[6] the Appellants wished to accept the $1,250 settlement on behalf of Mr. Lehman and that the Appellants would sign the requisite release. This settlement was entered into without the Appellee's written consent.

On December 18, 1990, the Appellee withdrew any offer of underinsurance coverage previously made[7] because of a December 5, 1990, report from Mrs. Arndt's

treating physician, Dr. George Orphanos, in which the doctor stated that "I can not definitely rule out that it would be impossible for any of the injuries sustained by Mrs. Arndt to have occurred in the rear end collision." Due to this report, the Appellee stated that all joint-tortfeasors' policy limits had to be exhausted prior to collecting any underinsurance coverage. The Appellants' attorney also attempted to withdraw the settlement agreement of $1,250 with Allstate because of the treating physician's report.

On December 19, 1990, the Appellants instituted a lawsuit against Mr. Lehman and Mr. Burdette with service of process also made upon the Appellee. Subsequently, the circuit court ordered the enforcement of the $1,250 settlement between the Appellants, Mr. Lehman, and his insurer, Allstate. Then, on May 27, 1992, the circuit court granted the Appellee's motion for summary judgment which forms the basis for this appeal.

## I.

The only issue before the Court is whether the lower court erred in granting the Appellee's motion for summary judgment. The Appellants argue that the settlement entered into with Allstate did not prejudice the Appellee's right of subrogation and that the settlement did not violate the subrogation clause of the Appellants' insurance policy. Further, the Appellants contend that the release given to Mr. Lehman only released him and no one else, including the Appellee.[8] Finally, the Appellants maintain that the lower court's determination that the Appellee's subrogation rights were prejudiced was premature since there

the November 2, 1990, letter that the Appellants planned to pursue underinsurance coverage in either event.

**6.** The running of the statute of limitations is not a valid reason for failing to first obtain the Appellee's written consent to settle since the Appellants certainly had the option to file suit and then proceed with settlement negotiations.

**7.** Apparently at some point during this period the Appellee and the Appellants' attorney had

discussed by telephone a possible $10,000 to $20,000 underinsurance settlement, but no formal offer was ever made by the Appellee.

**8.** Because this Court is upholding the consent-to-settle provision and since the Appellants violated that provision of their insurance policy, thereby voiding any underinsurance coverage the Appellee may have had to provide, the Appellants' contention that the Appellee was not released is without merit and will not be addressed.

was no negligence determination by a jury. In contrast, the Appellee contends that the Appellants settled with Mr. Lehman without the written consent and over the Appellee's objection. Moreover, the Appellee argues that the Appellants prejudiced the subrogation rights of Westfield by settling with and releasing Mr. Lehman for less than his Allstate policy limits, which precluded the Appellee from any subrogation claim it may have asserted against Mr. Lehman. Finally, the Appellee asserts that the Appellants' underinsurance proceeds are not recoverable until all the tortfeasors' primary liability coverage is exhausted.

 This is the first opportunity this Court has had to examine a consent-to-settle provision pertaining to the underinsurance motorists coverage of an automobile insurance policy. The policy issued to the Appellants by Westfield specifically provided that

EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for *property damage* or *bodily injury* sustained by any person:

1. If that person or the legal representative settles the *bodily injury* or *property damage* claim without our written consent.

It is well-established law in this State that " '[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. Pt. 1, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992). Further, "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989); *see* Syl. Pt. 4, *Russell*, 188 W.Va. at 81, 422 S.E.2d at 803.

It is significant that we are dealing with an exclusion which is applicable only to underinsurance coverage. As West Virginia Code § 33-6-31(b) (1992) provides, underinsurance motorists coverage is an optional coverage that an insurer may purchase.[9] *See Deel*, 181 W.Va. at 463, 383 S.E.2d at 95.

In the present case, the Westfield insurance policy language clearly and unambiguously provides that underinsurance motorists coverage will not be provided if the person sustaining property damage or bodily injury or the legal representative thereof settles without first obtaining the insurer's written consent. Thus, the issue becomes whether this exclusion violates the underinsurance provisions of the underinsured motorists statute. *See* W.Va.Code § 33-6-31.

 West Virginia Code § 33-6-31(f), as it relates to the subrogation of claims by an underinsurance carrier provides, in pertinent part, that "[a]n insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made." Obviously, the consent-to-settle provision enables the insurer to either utilize or waive the subrogation rights mandated by this statutory provision, depending upon whether or not consent is given. Thus, this provision in no

---

9. This Court has already upheld the following exclusionary insurance policy language regarding underinsurance coverage. For instance, an automobile insurance policy exclusion which prohibited the stacking of underinsurance coverage when more than one vehicle was insured under a single policy at rates reflecting a multi-car discount was upheld in *Arbogast v. Nationwide Mutual Insurance Co.*, 189 W.Va. 27, 427 S.E.2d 461 (1993). Also, in *Thomas v. Nation-* *wide Mutual Insurance Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992), we upheld the "family use exclusion" which excluded from the definition of an underinsured vehicle "any automobile owned by or furnished for the regular use of the insured or a relative." *Id.* at 641, 425 S.E.2d at 596, Syl. Pt. 2. Finally, in *Deel*, policy language which excluded underinsurance coverage was upheld. 181 W.Va. at 461, 383 S.E.2d at 93.

way conflicts with the spirit and intent of the underinsurance motorists statute, but rather it helps the insurer to protect its statutory subrogation right against the tortfeasor. *See Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So.2d 160, 164 (Ala.1991) (explaining that purpose of consent-to-settle provisions is to protect underinsured motorist insurance carrier's subrogation rights against tortfeasor as well as to protect insurer against possibility of collusion between insured and tortfeasor).

■ Consequently, we hold that a consent-to-settle provision of an automobile insurance policy pertaining to underinsured motorists coverage whereby an insured voids his underinsurance coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent[10] when such claim involves either the insured's underinsurance coverage or potentially involves that coverage is a valid and enforceable means by which an insurer may protect its statutorily-mandated right to subrogate claims pursuant to West Virginia Code § 33–6–31(f).[11] It is clear in this case that the Appellants violated the consent-to-settle provision in their insurance policy issued by Appellee since neither the Appellants nor their attorney obtained the Appellee's written consent to settle with Mr. Lehman and Allstate prior to actually settling the case and signing the written release.

## II.

Next, the Appellants assert that the settlement agreement entered into with Mr.

**10.** It is important to note that if an insurer acts unreasonably in refusing to give written consent to settle, that insurer may be subjecting itself to a bad faith claim pursuant to this Court's holding in *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990). However, the present case is certainly not one in which the insurer acted unreasonably.

**11.** Other jurisdictions have determined that consent-to-settle provisions involving underinsurance coverage are valid and enforceable. *See Jones v. Allstate Ins. Co.*, 601 So.2d 989 (Ala. 1992); *Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848 (Iowa 1988); *March v. Mountain States Mut. Cas. Co.*, 101 N.M. 689, 687 P.2d 1040 (1984); *Gallagher v. State Farm Mut. Auto.*

Lehman does not violate the subrogation clause of their insurance policy[12] and further, that the Appellee's claims that its subrogation rights were prejudiced are invalid. The Appellee, however, maintains that its subrogation rights were prejudiced when the Appellants settled and released Mr. Lehman for less than his policy limits.

■ The Appellants rely heavily upon this Court's decision in *Berry v. Nationwide Mutual Fire Insurance Co.*, 181 W.Va. 168, 381 S.E.2d 367 (1989) to support the contention that Westfield's subrogation rights were not prejudiced. In *Berry*, the appellees owned residential property next to Turman Construction Company (hereinafter referred to as Turman). From November 1980 through February 1981 some of the appellees' personal property was disheveled and their home was damaged due to Turman's detonation of several blasts. *Id.* at 170, 381 S.E.2d at 369. The appellees orally notified their homeowners' insurance carrier, the appellant Nationwide Mutual Fire Insurance Company (hereinafter referred to as Nationwide). The insurance carrier for Turman, Transamerica Insurance Company, was also notified. *Id.* Nationwide denied the appellees' claim after an investigation because of a seismographic report which indicated that a test blast, similar to the blasts which allegedly caused the Appellee's damages, had nothing to do with the Appellee's property. *Id.* at 171, 381 S.E.2d at 370. The appellees filed suit against Nationwide and Turman. A pretrial conference resulted in a settle-

*Ins. Co.*, 160 A.D.2d 1196, 555 N.Y.S.2d 463 (1990); *Archer v. State Farm Ins. Co.*, 419 Pa.Super. 558, 615 A.2d 779 (1992); *Huttleston v. Beacon Nat'l Ins. Co.*, 822 S.W.2d 741 (Tex.App. 1992).

**12.** The subrogation clause contained within the Appellants' insurance policy provides that:

OUR RIGHT TO RECOVER PAYMENT
 A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
 1. Whatever is necessary to enable us to exercise our rights; and
 2. Nothing after loss or prejudice them.

ment with Turman for $60,000. The case against Nationwide proceeded to trial where the jury returned a verdict in favor of the appellees and awarded compensatory and punitive damages. *Id.* Nationwide, upon appeal to this Court, maintained that its subrogation rights were precluded by the appellees' settlement with Turman. We disagreed, holding in syllabus point 1 that

> Where an insurer decides, after complete investigation, not to approve payment to its insured based upon the allegedly tortious conduct of another party, the insurer's claim that a subsequent settlement by the insured with the other party violates the subrogation clause of the insurance contract by prejudicing the insurer's subrogation rights is invalid.

*Id.* at 169, 381 S.E.2d at 368.

 It is clear that *Berry* is factually dissimilar and inapplicable to the present case. In *Berry*, the insurer denied the claim, while in the present case, the insurer, Westfield, did not deny the claim, but merely took the position that in order to recover underinsurance benefits, the Appellants first had to exhaust the limits of the tortfeasors' liability policies; a position which is supported by this Court's decision in *Pristavec v. Westfield Insurance Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990), where we held that

> in light of the preeminent public policy of the underinsured motorist statute, which is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, this Court holds that underinsured motorist coverage is activated under *W.Va.Code*, 33–6–31(b), as amended, when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits.

*Id.* at 338, 400 S.E.2d at 582 and Syl. Pt. 5. The Appellee's position is also supported by the recent decision of *Postlethwait v. Boston Old Colony Insurance Co.*, where we held that a plaintiff is not precluded from suing an underinsurance carrier "if the plaintiff has settled with the tortfeasor's liability carrier *for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.*" 189 W.Va. at 532, 432 S.E.2d at 802, Syl. Pt. 4 (1993) (emphasis added).

 In the present case, the Appellants had not only received $20,122.95 from a settlement for Mr. Burdette's policy limits, but the Appellants also had $100,000/$300,000 in liability coverage actually available from Mr. Lehman's insurer, Allstate. The Appellants, however, were willing to settle for only $1,250 from Mr. Lehman's available liability insurance coverage. Under our holding in *Pristavec*, the Appellants' underinsurance coverage was not activated. Further, pursuant to *Postlethwait*, the Appellants are precluded from suing the Appellee since the Appellants settled for less than the full amount of the tortfeasor's liability coverage and the Appellants failed to obtain a waiver from the Appellee of its subrogation rights.

It is unquestionable that the Appellee's subrogation rights were prejudiced by the Appellants' settlement. The Appellants' left Mr. Lehman with approximately $98,750 in remaining liability coverage for this accident. If the Appellee were required to pay underinsurance coverage in order to give the Appellants a full recovery, the Appellee could not have pursued a subrogation claim against Mr. Lehman, as a joint tortfeasor, under the doctrine of joint and several liability and pursuant to West Virginia Code § 33–6–31(f) due to the release entered between the Appellants, Mr. Lehman and Allstate. The Appellants not only violated the subrogation clause of their insurance policy issued by the Appellee, but they harmed the Appellee's statutory right to subrogate the claim against Mr. Lehman and his insurer.

### III.

The standard for granting a motion for judgment is as follows:

'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syl. Pt. 1, *Bauer Enterprises Inc. v. Frye*, 181 W.Va. 234, 382 S.E.2d 71 (1989). Based on the applicable law, the Appellee is not liable to the Appellants for underinsurance coverage. This determination was clear without having to make any further inquiry into the facts. *See id.* Because of the legal determinations made, "there [wa]s no genuine issue of fact to be tried," and therefore, the trial court properly granted the Appellee's motion for summary judgment. *Id.*

Based on the foregoing, the opinion of the Circuit Court of Raleigh County is hereby affirmed.

Affirmed.