438 S.E.2d 54

**STATE of West Virginia ex rel. STATE AUTO MUTUAL INSURANCE COMPANY, Relator,**

v.

**Honorable Thomas W. STEPTOE Jr., Judge of the Circuit Court of Jefferson County; Brenda Twigg, Individually and as Next Friend of Ashley Twigg and Stephen Twigg, Infants, Respondents.**

No. 21817.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1993.

Decided Nov. 23, 1993.

William Richard McCune, Jr., Dale Buck, Tammy Mitchell Bittorf, Jackson & Kelly, Martinsburg, for relator.

Lawrence M. Schultz, Askin, Burke & Schultz, Martinsburg, for respondents Brenda Twigg, individually and as next friend of Ashley Twigg and Stephen Twigg, infants.

PER CURIAM:

■ The issues raised in this original proceeding in prohibition are virtually identical to those we recently discussed in *State ex rel. Allstate Insurance Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993). The relator, State Auto Mutual Insurance Company (State Auto), seeks to prohibit the entry of an order by the respondent judge that foreclosed it from participating in litigation as an underinsured motorist carrier.

The underlying case involves a civil action brought by the respondent and plaintiff below, Brenda Twigg, individually and as next friend of Ashley Twigg and Stephen Twigg, infants. The Twiggs were passengers in a vehicle driven by a Danette Thomas, when the Thomas vehicle was rear-ended by a car being driven by Chad Buckhault. State Auto insures the Thomas vehicle, and that policy

has an underinsured motorist endorsement that provides coverage for the Twiggs.

Consequently, when the Twiggs sued Mr. Buckhault, they also served a copy of the complaint upon State Auto seeking payment from Thomas's underinsured motorist coverage.[1] Mr. Buckhault's automobile liability insurance carrier answered the complaint and served interrogatories and a request for production of documents on the Twiggs.

Thereafter, State Auto also served the Twiggs with a set of interrogatories and a request for production of documents on behalf of Mr. Buckhault. When the Twiggs objected to State Auto's discovery request, the relator filed a motion to compel responses under Rule 37 of the West Virginia Rules of Civil Procedure. In an order dated February 26, 1993, the trial court denied that motion. It is this order that State Auto seeks to prohibit.

■ We need not repeat what we recently said in *State ex rel. Allstate Insurance Co. v. Karl, supra.* It is sufficient to set out its Syllabus Points:

"1. The prohibition standard set out in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), permits an original prohibition proceeding in this Court to correct substantial legal errors where the facts are undisputed and resolution of the errors is critical to the proper disposition of the case, thereby conserving costs to the parties and economizing judicial resources.

"2. 'W.Va.Code, 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person, and the insurer providing underinsured motorist cov-

---

1. *See* W.Va.Code, 33–6–31(d) (1988).

erage is liable for the remainder of the damages, but not to exceed the coverage limits.' Syllabus Point 4, *State Automobile Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990).

"3. 'W.Va.Code, 33–6–31(d) (1988), outlines certain rights given to an uninsured/underinsured insurance carrier where a tortfeasor who is uninsured or underinsured is sued by a plaintiff. It requires that a copy of the complaint be served upon the insurance carrier. It also allows the carrier "the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured vehicle or in its own name." ' Syllabus Point 1, *Postlethwait v. Boston Old Colony Insurance Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993).

"4. An underinsured motorist carrier occupies the position of an excess or additional insurer in regard to the tortfeasor's liability carrier, which is deemed to have the primary coverage. Consequently, the tortfeasor's liability carrier, having primary coverage, should ordinarily control the litigation on behalf of the tortfeasor insured.

"5. A primary insurance carrier has a duty to act in good faith with respect to an excess or additional insurance carrier when defending a claim on behalf of the primary insurance carrier's insured.

"6. If an underinsured motorist carrier can demonstrate that the liability insurance carrier of the tortfeasor is defending the claim in a bad faith manner, the underinsured motorist carrier may petition the court to allow it to assume primary control of the defense.

"7. 'A consent-to-settle provision of an automobile insurance policy pertaining to underinsured motorist coverage whereby an insured voids his underinsurance coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent when such claim involves either the insured's underinsurance coverage or potentially involves that coverage is a valid and enforceable means by which an insurer may protect its statutorily-mandat-ed right to subrogate claims pursuant to West Virginia Code § 33–6–31(f) (1992).' Syllabus Point 3, *Arndt v. Burdette*, 189 W.Va. 722, 434 S.E.2d 394 (1993).

"8. An underinsured motorist carrier may assume control of the litigation on behalf of the tortfeasor where the tortfeasor's liability carrier has declined to defend. An underinsured motorist carrier is not foreclosed from filing an answer on behalf of the tortfeasor when it appears that a default judgment might be entered against the tortfeasor.

"9. A liability carrier and an underinsured motorist carrier may agree to jointly defend an action by having their respective attorneys participate together in the defense. This does not mean that they may file separate pleadings, indulge in separate discovery, or examine witnesses separately.

"10. ' " 'Subrogation, being a creation of equity, will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another.' Syllabus, *Buskirk v. State–Planters' Bank & Trust Co.*, 113 W.Va. 764, 169 S.E. 738 (1933)." Syllabus point 6, *Fuller v. Stonewall Cas. Co. of W. Va.*, 172 W.Va. 193, 304 S.E.2d 347 (1983).' Syllabus Point 2, *Kittle v. Icard*, 185 W.Va. 126, 405 S.E.2d 456 (1991).

"11. The right of subrogation in W.Va. Code, 33–6–31(f) (1988), is not available where the policyholder has not been fully compensated for the injuries received and still has the right to recover from other sources. Subrogation is permitted only to the extent necessary to avoid a double recovery by such policyholder.

"12. An underinsured motorist carrier does not have a due process right to assume independent control of the defense of a tortfeasor who is represented by a liability carrier.

"13. W.Va.Code, 33–6–31(d) (1988), does not give an underinsured motorist carrier the absolute right to file pleadings on behalf of a tortfeasor who has liability coverage and is being defended by a liability insurance carrier.

"14. The language of W.Va.Code, 33–6–31(d) (1988), that allows an uninsured or underinsured motorist carrier to answer a

complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy."

Under the foregoing law, we hold that the circuit court was correct in its ruling. Consequently, we refuse to issue a writ of prohibition.

Writ denied.