464 S.E.2d 570

**Mary Jo BARTH, Plaintiff
Below, Appellee,**

v.

**William D. KEFFER, Defendant
Below, Appellee,**

**Allstate Insurance Company, Appellant.**

**No. 22691.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 12, 1995.

Decided Oct. 26, 1995.

52

Frederick E. Gardner, Chase & Gardner, Moundsville, for appellee Mary Jo Barth.

B. Karleton Kesner, Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellant Allstate Insurance Company.

MILLER, Justice: [1]

The appellant, Allstate Insurance Company (Allstate), appeals a June 21, 1994, order of the Circuit Court of Marshall County, which denied Allstate's motion to be dismissed. Allstate carried underinsurance coverage for Mary Jo Barth, the plaintiff below and one of the appellees herein. Allstate claims Ms. Barth settled her personal injury claim with a tortfeasor for less than the limit of his liability insurance coverage and she should be barred from recovering underinsurance based on *Arndt v. Burdette*, 189 W.Va. 722, 434 S.E.2d 394 (1993). We agree, and we reverse the judgment of the circuit court.

**I.**

On July 30, 1990, Ms. Barth was a passenger in an automobile operated by William D. Keffer, one of the defendants below and one of the appellees herein. Mr. Keffer's auto-

mobile struck a vehicle owned by David H. Dobbs, a defendant below, which vehicle was parked along the shoulder of State Route 2, south of Moundsville, West Virginia.

Ms. Barth filed suit in July, 1992, alleging negligence on the part of Mr. Keffer for driving his vehicle into Mr. Dobbs's car. Negligence was asserted against Mr. Dobbs under W.Va.Code, 17C–15–15(b) (1978), for parking on a roadway or shoulder between sunset and sunrise where there was insufficient light to reveal any person or obstacle within a distance of five hundred feet. Allstate was served as the underinsured motorist carrier pursuant to W.Va.Code, 33–6–31(d) (1988).[2]

Prior to trial, Ms. Barth settled with MICO Insurance Company, the liability carrier for Mr. Keffer, for its policy limits of $20,000. This settlement was approved by Ms. Barth's underinsurance carrier, Allstate. Mr. Keffer was subsequently dismissed from this suit. Immediately prior to trial, Ms. Barth also requested consent from Allstate to settle with Mr. Dobbs for $15,000, but Allstate refused to consent.[3] Subsequently, Allstate was informed that Ms. Barth settled with Mr. Dobbs for $15,000, which was less than the full limit of Mr. Dobbs's liability policy with Motorists Mutual Insurance Company. Ms. Barth also gave a complete release to Mr. Dobbs for further liability arising from the accident.

Allstate then filed a motion to dismiss Ms. Barth's claim for underinsurance coverage on the basis that her release of Mr. Dobbs terminated its right to subrogation. The circuit court heard arguments on the motion and concluded that Ms. Barth's claim against Mr. Dobbs was "tenuous," and that the best interests of justice would have been served

---

1.  Pursuant to an Administrative Order entered by this Court on September 11, 1995, retired Justice Thomas B. Miller was recalled for the September 1995 term because of the retirement of Justice W.T. Brotherton, Jr.

2.  W.Va.Code, 33–6–31(d), states, in material part:

    "Any insured intending to rely on the coverage required by subsection (b) of this section shall, if any action be instituted against the owner or operator of an uninsured or underinsured motor

vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law[.]"

The minor changes in the 1995 amendment to W.Va.Code, 33–6–31, did not affect this subsection.

3.  Allstate asserts that Mr. Dobbs had liability coverage with Motorists Mutual Insurance Company in the amount of $50,000.

by approval of the settlement. The circuit court determined the settlement was made in good faith under *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990), and Mr. Dobbs was dismissed from the suit. The circuit court rejected Allstate's reliance on *Arndt v. Burdette, supra*, because in that case the unconsented settlement was made prior to suit being filed. The circuit court reasoned that in this case the settlement occurred after institution of the suit by the plaintiff.

Following a jury trial, Ms. Barth received a $70,582.95 verdict against Allstate. This amount was reduced by 30 percent for her comparative contributory negligence, less the $20,000 offset for Mr. Keffer's liability policy payment and the $15,000 paid under Mr. Dobbs's liability policy. These offsets left a net judgment of $14,408.07.

■ Allstate maintains that because Ms. Barth violated the consent-to-settle provisions of her underinsured coverage, Allstate is not legally obligated to provide underinsured benefits. It contends that its motion to dismiss should have been granted under Syllabus Point 3 of *Arndt v. Burdette, supra:*

"A consent-to-settle provision of an automobile insurance policy pertaining to underinsured motorists coverage whereby an insured voids his underinsurance coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent when such claim involves either the insured's underinsurance coverage or potentially involves that coverage is a valid and enforceable means by which an insurer may protect its statutorily-mandated right to subrogate claims pursuant to West Virginia Code § 33–6–31(f) (1992)."

■ The plaintiff initially advances a procedural bar based on the fact that Allstate's insurance policy was not made a part of the official record. Therefore, Allstate is not entitled to rely on the consent-to-settle language in the policy to defeat its underin-

sured motorist obligation. The language of Syllabus Point 3 of *Arndt, supra*, suggests that the consent-to-settle language in an insurance policy is merely an adjunct to enforcing the insurer's statutory right of subrogation contained in W.Va. Code, 33–6–31(f).[4] *Arndt* makes explicit what we earlier stated in Syllabus Point 3 of *Postlethwait v. Boston Old Colony Insurance Co.*, 189 W.Va. 532, 432 S.E.2d 802 (1993):

"W.Va.Code, 33–6–31(f) (1988), authorizes a right of subrogation by an uninsured or underinsured insurance carrier for the amount paid to an injured person as against the tortfeasor."

■ Although this statutory right of subrogation does not arise until payment is made, it is apparent that when an injured party settles with a tortfeasor and gives a complete release, the injured party thereby abolishes the uninsured or underinsured carrier's statutory subrogation rights. Consequently, the injured party should not be able to recover against the uninsured or underinsured motorist carrier. Thus, in order to protect the insurer's statutory subrogation right, the injured party must obtain the insurer's consent to settle with the tortfeasor or, as we explained in Syllabus Point 4 of *Postlethwait, supra*, waive his or her right of subrogation:

"A plaintiff is not precluded under W.Va. Code, 33–6–31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor."

The foregoing principles deal with our statutory subrogation right contained in W.Va. Code, 33–6–31(f), and exist independently of the language in the insurance contract. Thus, we conclude that the statutory subrogation right contained in W.Va.Code, 33–6–31(f), ordinarily precludes an injured party

---

4. W.Va.Code, 33–6–31(f), in material part, states: "An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made." This subsection was unaffected by the minor changes in the 1995 amendment to W.Va.Code, 33–6–31.

from settling for less than the liability policy limits of the tortfeasor and giving a general release without the consent of the underinsured motorist carrier that has coverage for the injured party.[5] This statutory subrogation rule is consistent with general liability insurance law relating to subrogation principles. *See, e.g., Federal Kemper Ins. Co. v. Arnold*, 183 W.Va. 31, 393 S.E.2d 669 (1990); *Runner v. Calvert Fire Ins. Co.*, 138 W.Va. 369, 76 S.E.2d 244 (1953). *See generally* 44 Am.Jur.2d *Insurance* § 1813 (1982); 16 George J. Couch, Couch on Insurance § 61:197 (2nd rev. ed. 1983); 2 Alan I. Widiss, Uninsured and Underinsured Motorist Coverage 355, *et seq.* (2nd ed. 1985).

## II.

■ Ms. Barth advances a more substantive argument that we should apply our rule regarding contribution among joint tortfeasors where there is an automobile accident involving both liability insurance coverage for the tortfeasor and uninsured or underinsured motorist coverage for the injured party. This theory would permit insurance payments made in good faith to exonerate the payee under Syllabus Point 6 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990):

"A party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution."

■ Such a good faith settlement would then allow the remaining defendants to offset the payments on any verdict rendered against them as outlined in Syllabus Point 7 of *Zando, supra.*[6] We defined the doctrine of contribution in Syllabus Point 1 of *Zando, supra*:

" 'The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation.' Syllabus Point 4, in part, *Sydenstricker v. Unipunch Prods., Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982)."

Here, we deal with the statutory right of subrogation under W.Va.Code, 33–6–31(f).[7] Despite some superficial similarity, contribution is different from our statutory subrogation. This subrogation right is available only to insurers who issue uninsured or underinsured motorist liability coverage under W.Va. Code, 33–6–31(b). As subsection (f) refers to claims filed under W.Va.Code, 33–6–31(b), which is the uninsured and underinsured motorist provision, statutory subrogation is more limited than the general right of subrogation, which we outlined in Syllabus Point 4 of *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986): " 'The doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other.' Syl.Pt. 1, *Bassett v. Streight*, 78 W.Va. 262, 88 S.E. 848 (1916)."

■ Subrogation ordinarily involves an antecedent obligation that made the payor liable to pay the debt of another; whereas, contribution among joint tortfeasors, as dis-

---

5. In Syllabus Point 11 of *State ex rel. Allstate Insurance Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994), we recognized this limitation on the statutory right of subrogation: "The right of subrogation in W.Va.Code, 33–6–31(f) (1988), is not available where the policyholder has not been fully compensated for the injuries received and still has the right to recover from other sources. Subrogation is permitted only to the extent necessary to avoid a double recovery by such policyholder."

6. Syllabus Point 7 of *Zando* states:
"Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties. Those defendants against whom the verdict is rendered are jointly and severally liable to the plaintiff for payment of the remainder of the verdict. Where the relative fault of the nonsettling defendants has been determined, they may seek contribution among themselves after judgment if forced to pay more than their allocated share of the verdict."

7. For the text of W.Va.Code, 33–6–31(f), see note 4, *supra*.

cussed in *Zando, supra*, arises out of concurrent negligent acts which combine to cause injury to a third party. The right of contribution between joint tortfeasors is inchoate in the sense that it allows a party to bring into the suit another joint tortfeasor prior to judgment.[8] Moreover, the right of contribution is not dependent on a contract. On the other hand, the right of subrogation under W.Va.Code, 33–6–31(f), rests on the statutory obligation contained in W.Va.Code, 33–6–31(b), which requires a motor vehicle insurance carrier to provide uninsured and underinsured motorist coverage, as explained in Syllabus Point 4 of *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994):

> "Under W.Va.Code, 33–6–31(b) [ (1988) ], an insurance carrier is statutorily required to pay to its insured, who has uninsured or underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle. W.Va.Code, 33–6–31(b)." [9]

The statutory obligation to offer uninsured and underinsured motorist coverage required under W.Va.Code, 33–6–31(b), to its own insured when accepted creates what we termed in *Marshall v. Saseen, supra*, first party insurance. This relationship creates specific obligations and damage exposure to the insurer which are stated in Syllabus Point 6 of *Marshall, supra*:

> "When a policyholder of uninsured or underinsured motorist coverage issued pursuant to W.Va.Code, 33–6–31(b) [ (1988) ], substantially prevails in a suit involving such coverage under W.Va.Code, 33–6–31(d), the insurer issuing such policy is liable for the amount recovered up to the policy limits, and policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience."

The good faith settlement standard in *Zando* is not applicable to our statutory subrogation claim, which we discussed herein and which under *Arndt* and our other cases forecloses a plaintiff from settling with a tortfeasor and giving a general release. This statutory subrogation right under W.Va. Code, 33–6–31(f), is *sui generis* as it relates only to the right of an uninsured or underinsured motorist insurance carrier to recover sums paid under its policy to the injured plaintiff who is its policyholder. The broad principles of contribution contained in *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc., supra*, that release a tortfeasor from further liability to the injured party upon a good faith settlement without regard to the tortfeasor's liability insurance coverage are completely different and should not be confused with W.Va.Code, 33–6–31(f).

### III.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Marshall County as we find the judgment against Allstate was improper once the plaintiff made a partial settlement with Mr. Dobbs without the consent of Allstate.

Reversed.

ALBRIGHT, J., did not participate.

---

**8.** We stated in Syllabus Point 2 of *Zando, supra*: "A defendant in a civil action has a right in advance of judgment to join a joint tortfeasor based on a cause of action for contribution. This is termed an 'inchoate right to contribution' in order to distinguish it from the statutory right of contribution after a joint judgment conferred by W.Va.Code, 55–7–13 (1923)."

**9.** In *Marshall v. Saseen, supra,* we pointed out that W.Va.Code, 33–6–31(b), mandates that an insurance policy issued in this State "must have an endorsement giving the policyholder uninsured motorist coverage with limits no less than that required under our Motor Vehicle Safety Responsibility Law. W.Va.Code, 17D–4–2 (1979)." 192 W.Va. at 98, 450 S.E.2d at 795. We also said that this section requires the company to offer to its insured the additional option of obtaining higher limits for uninsured and underinsured motorist coverage.