Robert W. LESLIE and Laura D. Leslie, his wife, Plaintiffs,

v.

W.H. TRANSPORTATION CO., INC., a Wisconsin corporation; State Auto Property & Casualty Insurance Company, an Ohio corporation; Charles C. Walters, an individual; and Joseph W. Oswald, an individual, Defendants.

No. CIV.A. 3:03–2142.

United States District Court, S.D. West Virginia. Huntington Division.

June 16, 2004.

Gerard R. Stowers, Esquire, Bowles Rice McDavid Graff & Love, Charleston, WV, for Plaintiffs.

Nora Clevenger Price, Steptoe & Johnson, Huntington, WV, Jeffery L. Robinette, Lorna M. Waddell, Robinette Law Offices, Morgantown, WV, for Defendants.

## ORDER

CHAMBERS, District Judge.

There are several related motions before the Court. Plaintiffs' motion (doc. no. 33) to reconsider the December 11, 2003 Order is **GRANTED,** and the Order (doc. no. 31) is retracted with respect to the Court's interpretation of the Exhaustion Clause. The Court has considered the issues anew with the benefit of motions for partial summary judgment and supporting memoranda. After considering the motions and responses, as well as oral argument presented to the Court on January 28, 2004, the Court **DENIES** the motion by Defendant State Auto Property & Casualty Insurance Company (State Auto) (doc. no. 51), and **GRANTS** partial summary judgment in favor of Plaintiffs, Robert and Laura Leslie (doc. no. 54). The Court therefore finds in Plaintiffs' favor on the counterclaim. Finally, State Auto's Motion for Judgment on the Pleadings (doc. no. 39) is **DENIED.**

## FACTUAL BACKGROUND

Plaintiff Robert Leslie was injured in a three-vehicle accident on September 19, 2001. The accident occurred when Defendant Walters' vehicle crossed the median on Interstate 64 and struck Mr. Leslie's vehicle. Mr. Leslie's vehicle was then struck by the truck traveling behind him, driven by Defendant Joseph Oswald for Defendant W.H. Transportation. Plaintiffs and State Auto agree that Plaintiffs' injuries were caused by negligence on the part of both Oswald and Walters.

At the time of the accident, the Leslies held an insurance policy from State Auto that included underinsured motorist (UIM) coverage. The Leslies settled their claim against Walters with Walters' insurer for his $20,000 policy limit. State Auto consented to this settlement and waived subrogation. The Leslies have not settled with Oswald or W.H. Transportation, but have joined these defendants in the instant action. Of particular concern to the pending motions is the UIM coverage in the Leslies' policy. The language of the policy provides:

A. COVERAGE

   1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." ... The owner's or driver's liability for these damages must result from the ownership, maintenance or

use of the "underinsured motor vehicle."

2. With respect to damages resulting from an "underinsured motor vehicle" we will pay under this coverage only if a. or b. below applies:

a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or . . .

F. ADDITIONAL DEFINITIONS . . .

5. "Underinsured motor vehicle" means a land motor vehicle or trailer to which a liability bond or policy applies at the time of the "accident" but the amount paid for "bodily injury" or "property damage" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

*Endorsement, State Auto's Answer,* Ex. A, at 1–2.

## PROCEDURAL BACKGROUND

Thus far, the majority of the activity in this case has regarded the threshold issue of whether the plaintiffs' policy allows them to claim UIM coverage when they have not yet exhausted claims against Oswald and W.H. Transportation. This Court granted a motion by State Auto to Bifurcate and Stay on December 11, 2003. The Order granting that motion had the effect of also granting the relief sought in State Auto's counterclaim: The Court declared "that Plaintiffs must exhaust the limits of all tortfeasors' insurance policies before the underinsured motorist coverage

under the State Auto policy is triggered." [1] *Order,* Dec. 11, 2003. Although the Court had not intended to grant summary judgment on the counterclaim, the issue presented in that claim was unavoidable because the Court had to determine whether the UIM claims against State Auto should be bifurcated and stayed.

The Plaintiffs then moved for reconsideration of the December 11th Order. Plaintiffs argued that they had no notice that the Court would address the dispositive exhaustion issue and that the Court had misapplied the exhaustion clause. In response to the variety of issues raised in the motion to reconsider and State Auto's response, the Court held a hearing on the motion. At the conclusion of the hearing, the Court found that the issues presented by the counterclaim were questions of law appropriate for summary judgment and directed the parties to file motions for summary judgment on the counterclaim. The Court now considers those motions.

## ANALYSIS

Plaintiffs argue that the settlement with Walters should trigger their UIM coverage under the contract because: 1) it was for the policy limit of $20,000, 2) their damages exceed that amount, and 3) Mr. Walters is legally liable for all of their damages. In the event that the Court interprets the contract differently, Plaintiffs argue that the exhaustion clause is unenforceable as against public policy. State Auto argues that the exhaustion clause is valid and that it requires Plaintiffs to exhaust the limits of any applicable insurance policies carried by Oswald

1. With its Answer, State Auto filed a counterclaim that seeks declaratory relief. State Auto requested the Court to declare: "In the event that *any* liability for Plaintiffs' injuries is attributable to W.H. Transportation Co., Inc., and/or Joseph W. Oswald, then underinsured motorist coverage under the State Auto policy is not activated until the coverage limits of *both* Defendant Walters' *and* Defendant W.H. Transportation's liability policies have been exhausted." *State Auto's Answer,* unnumbered p. 15 (emphasis in original).

and/or W.H. before they may seek their UIM benefits.

### West Virginia Case Law: Interpreting Exhaustion Clauses

The West Virginia Supreme Court of Appeals has not explicitly addressed the question before the Court, but it has upheld exhaustion clauses under other circumstances. *See Castle v. Williamson,* 192 W.Va. 641, 453 S.E.2d 624 (1994); *Arndt v. Burdette,* 189 W.Va. 722, 434 S.E.2d 394 (1993).

*Arndt* involved a three-car accident. The claimant, Frances Arndt, was first struck by Burdette and then by Lehman. A doctor's report indicated that some of her injuries may have occurred from the second collision. Arndt was insured by Westfield, and her policy included a UIM provision with an exhaustion clause. Burdette was insured by Aetna, which settled with Arndt for the policy's limits. Lehman was insured by Allstate, which argued that Lehman was not negligent and settled for a small amount, far below the policy limits, without Westfield's consent.

Because Arndt settled without consent, the issue in *Arndt* was whether a consent-to-settle provision was valid and enforceable. The clause provided:

A. We do not provide Underinsured Motorists Coverage for property damage or bodily injury sustained by any person:

1. If that person or the legal representative settles the bodily injury or property damage claim without our written consent.

*Id.* at 399.

The Court upheld the validity of the exclusion, noting that the coverage at issue was optional, and it interpreted the clause literally. It found the policy's language to mean that "an insured voids his underinsurance coverage by settling a claim with a tortfeasor without first obtaining the insurer's written consent." *Id.* at 400. Arndt was therefore unable to obtain UIM coverage.

*Castle* involved a two-car accident. The claimant, Teresa Castle, was an uninsured passenger in a car ("car R/C") driven by Tracy Castle and owned by Monica Russell. Car R/C was covered by both liability and UIM coverage under a policy with Dairyland Insurance. The second car ("car W") had liability coverage with Nationwide. Teresa Castle exhausted the policy limits of the liability coverage that applied to car R/C. She then settled with Nationwide for an amount *below* the policy limit applicable to car W. Teresa Castle then pursued UIM coverage from Dairyland under the policy on car R/C, which provided:

We'll pay damages under this coverage caused by an accident with an underinsured motor vehicle only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements. *Id.* at 646, 453 S.E.2d 624.

The Court used this language as a starting point for its analysis, and concluded that the language was clear and unambiguous in its meaning: "that underinsurance under the policy is only activated once the limits of liability under any applicable liability policies have been exhausted." *Id.* at 647, 453 S.E.2d 624. The Court stated that "[t]he language of the policy in this case clearly precludes underinsured coverage since the limits of liability of the tortfeasor were not exhausted." *Id.* The Court came to this conclusion despite the fact that the limits of liability coverage on the car in which Teresa Castle was riding had been exhausted. The Court explained:

Accordingly, we hold that where a guest passenger is injured by the con-

current negligence of her host driver and a third party, the guest passenger may not recover under the host driver's underinsured motorist insurance if the host driver's underinsured motorist policy contains clear and unambiguous language which requires the exhaustion of applicable liability coverage before the underinsured motorist coverage is activated and the guest passenger fails to obtain the full amount of the liability limits from the third-party tortfeasor's carrier. *Id.* at 648, 453 S.E.2d 624.

This holding is likely very limited because it only applies to situations where the claimant is seeking UIM benefits from insurer of a car that is not considered an "underinsured motor vehicle."[2] In *Castle*, the defendant maintained that the driver of car R/C had been partly at fault, but the Court would not find that car R/C was an underinsured vehicle for the purposes of the exhaustion clause.

In the same year as *Castle*, the Court clarified the meaning of "underinsured motor vehicle." *Dairyland Insurance Co. v. Bradley*, 192 W.Va. 199, 451 S.E.2d 765 (1994). In *Dairyland*, the decedent was a guest passenger who had exhausted the limits of liability on the policies of the host driver and the driver of the other car. The Court held that, despite the host driver's status as a tortfeasor, the host vehicle was not an underinsured motor vehicle under the West Virginia Code, and therefore the UIM coverage under the host's policy could be triggered only as a result of the underinsured status of the second driver. *Id.* at 767 (examining the same language that is in the Code today). This more fully explains the decision in *Castle*: Car R/C would not have been considered an underinsured vehicle, so UIM benefits had to be denied because the liability policy on the only underinsured motor vehicle involved had not been exhausted.

This result is consistent with the reasoning of Judge Haden, writing for this district in *Mordesovitch v. Westfield Insurance Company*. 258 F.Supp.2d 470 (S.D.W.Va.2003). The claimant in that case had three claims arising from a wrongful death: a negligence claim against the driver of the other car, a dramshop claim against the bar that served alcohol to the decedent, and a UIM claim against Westfield, the decedent's insurer. The claimant settled with the other driver for her $50,000 policy limit and Westfield waived subrogation. The claimant also received $300,000 in UIM benefits from Westfield and later settled his claim with the bar.[3] Therefore, the issue in *Mordesovitch* was whether Westfield had a right of subrogation against proceeds from the bar. The policy with Westfield provided a right of subrogation to the extent of UIM payments, but the claimant argued that Westfield had acted in bad faith when it unlawfully sought subrogation against the bar. The Court held that Westfield did have subrogation rights against the bar and had acted appropriately in attempting to protect them.

**2.** Under the West Virginia Code, "underinsured motor vehicle" is defined as: a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than the limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. W. Va.Code § 33–6–31 (2003).

**3.** Significantly, the UIM benefits were available to the claimant before the second settlement, despite the fact that there was still a possible tortfeasor against whom the claimant might recover (the bar).

### The Requirements of the Leslies' Exhaustion Clause

■ In both *Arndt* and *Castle*, the Court applied basic contract law and enforced the unambiguous language of the contract. This Court must therefore examine the Leslies' policy as it would any other contract, looking first to the policy's clear and unambiguous language. When read in the context of the policy as a whole, it becomes clear that the exhaustion clause only requires the plaintiff to reach the limits of one underinsured tortfeasor's liability limits before pursuing UIM benefits based on that underinsured tortfeasor's total legal liability.

First, State Auto promises that "[w]ith respect to damages resulting from an 'underinsured motor vehicle' we will pay under this coverage... if [t]he limits of any applicable liability bonds or policies have been exhausted by judgments or payments." This promise is only conditional on the existence of one underinsured motor vehicle. The "limits of any applicable liability bonds or policies" refers only to those limits with respect to one underinsured vehicle, not all the tortfeasors potentially liable for the claimant's damages.

Second, "underinsured motor vehicle" is defined as a vehicle "to which a liability bond or policy applies at the time of the 'accident' but the amount paid ... is not enough to pay the full amount the 'insured' is legally entitled to recover as damages." Here, regardless of any joint liability on the part of Mr. Oswald or W.H. Transportation, Mr. Walters would be liable for the total amount of the Leslies' damages under West Virginia's joint and several liability scheme. Mr. Walters' policy limit, $20,000, is less than the amount of damages suffered by the Leslies. Thus, under the definitions supplied by State Auto's policy, Mr. Walters is an underinsured motorist whose policy limits have been exhausted for the purposes of UIM coverage.

Third, the policy includes other clauses that support the conclusion that only one underinsured tortfeasor's policy must be exhausted before UIM benefits are available. For example, the policy provides for the "transfer of rights of recovery against others." *See State Auto's Answer*, Ex. A, "Business Auto Coverage Form," at 6, § IV, Part A(5). This clause clearly reserves the insurer's right, after making a payment to or on behalf of an insured, to recover damages from any tortfeasor that the insured could recover against. This indicates the expectation that benefits might sometimes be paid when the insured still had some outstanding claims. In addition, the endorsement that amends the policy to include underinsured motorists coverage provides for a transfer of right of recovery, or subrogation right, where the insured has been fully compensated. *See State Auto's Answer*, Ex. A, "West Virginia Underinsured Motorists Coverage," at 2, Part E(3). The right does not apply to UIM coverage where the insured gives State Auto notice of a settlement with an underinsured motorist and State Auto fails to advance that amount to the insured. The reservation of a subrogation right indicates that State Auto foresees situations in which an insured receives UIM benefits and State Auto then pursues a claim against a tortfeasor who is legally liable for the damages suffered by the insured. If the insured were required to exhaust every tortfeasor's policy limit before receiving UIM benefits, it is hard to imagine a UIM scenario in which subrogation rights would arise.

Other courts have found similar policy language to require the exhaustion of only one tortfeasor's policy. *See e.g., Colonial Penn Ins. Co. v. Salti*, 84 A.D.2d 350, 446 N.Y.S.2d 77 (1982) (holding the claimants

could recover under an underinsured motorist policy despite a below-limit settlement with the insurer of the car in which they were riding). The *Salti* Court, using a contract-law approach, interpreted an exhaustion clause that did not require payment of UIM benefits "until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted." *Id.* at 352, 446 N.Y.S.2d 77. The Court interpreted the clause to relate to one underinsured vehicle only and not to the total number of vehicles involved in the accident. *Id.*

### The Public Policy Argument

As discussed above, exhaustion clauses generally do not appear to be against West Virginia's public policy. Many states that have invalidated similar exhaustion clauses as against public policy have done so for reasons that are not present here, such as requirements under a state statute. *See e.g., Brown v. USAA Casualty Ins. Co.,* 17 Kan.App.2d 547, 840 P.2d 1203 (1992) (interpreting a Kansas statute). West Virginia statutory law does not make UIM coverage mandatory; instead, it is an optional form of coverage. *See* W. Va.Code § 33–6–31(b) (requiring insurers to offer UIM as an option to insureds). Regardless, the exhaustion clause applied in this case does not require the exhaustion of the policy limits of more that one underinsured tortfeasor, as such, the Court need not fully address Plaintiffs' public policy arguments.

Finally, it is worth noting that the result reached here, under the language of the Leslie's policy and the facts of this case, is the same result many Courts have reached for public policy reasons alone. The Appellate Court of Illinois held that an exhaustion clause requiring the exhaustion of all tortfeasors' liability limits was unenforceable because it violated public policy.

*Mulholland v. State Farm Mutual Auto. Ins.,* 171 Ill.App.3d 600, 122 Ill.Dec. 657, 527 N.E.2d 29 (1988). The Court explained that the exhaustion clause would require a claimant to wait until the liability of an alleged joint tortfeasor was fully litigated before recovering any compensation. *Id.* at 617, 122 Ill.Dec. 657, 527 N.E.2d 29. The Court also noted that the policy provided for subrogation rights, which would be virtually unnecessary if exhaustion was always required. *Id.* at 618, 122 Ill.Dec. 657, 527 N.E.2d 29. Similarly, the Supreme Court of Montana found that an exhaustion clause requiring all policy limits be exhausted before UIM coverage would be available was unenforceable on the basis of public policy. *Augustine v. Simonson,* 283 Mont. 259, 940 P.2d 116 (1997). The Court summarized its public policy concerns: The clause promoted litigation expenses that would reduce recovery; payment would be delayed; and a tortfeasor's insurer might be motivated to offer a settlement just below a policy limit to force trial and increase delay. *Id.* at 121.

### CONCLUSION

The counterclaim is resolved in favor of the plaintiffs. Therefore, the plaintiffs' motions to reconsider and for partial summary judgement are **GRANTED,** and the defendant's motions for judgment on the pleadings and for partial summary judgment are **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to all counsel of record and any unrepresented parties, and to publish this Order on the District's website.